IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL SHEPHERD and DEBORAH SHEPHERD** | : | CIVIL ACTION |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | No. 20-1046 |
| | : | |
| **TALOTTA, et al.,** | : | |
| *Defendants.* | : | |

Kenney, J.

### MEMORANDUM

Plaintiffs Paul and Deborah Shepherd seek underinsured motorist coverage for bodily injuries Paul suffered in a car accident while driving a UPS delivery truck in the course of his employment with UPS.  Because the other driver's insurance policy did not provide enough coverage to compensate for Paul Shepherd's injuries, the Shepherds sought underinsured motorist ("UIM") coverage under their own car insurance policy with defendant The First Liberty Insurance Company.  The Shepherds' policy provides UIM coverage, but it excludes from that coverage injuries sustained while driving a non-owned vehicle provided for the insureds' regular use.  The Shepherds ask the Court to find that First Liberty breached its contract by failing to provide UIM coverage because the "regular use exclusion" violates Pennsylvania law and is contrary to public policy.  For the reasons below, the Court disagrees.

**I.    BACKGROUND**

This case stems from bodily injuries suffered by Paul Shepherd in a 2018 motor vehicle accident.  Defendant's Statement of Undisputed Material Facts, ECF No. 37-1, ¶¶ 4, 6. At the time of the accident, Paul Shepherd was driving a 2010 Brown Freight Truck owned by his employer, UPS, in the course and scope of his employment.  *Id.* at ¶ 5.  He has recovered

$15,000 from the insurer of the other driver, who was at-fault, and $283,143 in worker's compensation**.**

Because the other driver's insurance coverage was not enough to compensate for the injuries Paul Shepherd suffered, Paul presented a claim for UIM benefits to his insurer, Defendant The First Liberty Insurance Corporation. *Id.* at ¶ 7. Liberty Mutual, listed on the letterhead of the Shepherds' insurance policy, covered UPS for workers' compensation. *See* ECF No. 38-3. Paul's personal automotive insurance policy was valid at the time of the accident and listed him as having an "affinity affiliation" with UPS and benefitting from a payroll deduction discount. ECF No. 37-1 at ¶ 7; ECF No. 37-3 at 2. Paul's policy included Uninsured ("UM") and UIM coverage. *Id.* at ¶ 7. First Liberty denied coverage, citing the policy's "regular use exclusion" to UIM coverage, which states:

> We do not provide Underinsured Motorists Coverage for "bodily injury" sustained . . . By an "insured," as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy . . .

ECF No. 37-3 at 39.

The plaintiffs then filed the instant action in the Court of Common Pleas of Philadelphia County against the driver of the other car, Vincenzo Talotta**,** and First Liberty. ECF No. 37-1, ex. A. First Liberty timely removed the action. ECF No. 1. Paul Shepherd alleged a breach of contract claim and other extra-contractual claims, and Deborah Shepherd alleged a derivative loss of consortium claim. *Id.* This Court granted First Liberty's Motion to Dismiss the extra-contractual claims. ECF No. 3. Plaintiffs have also settled their claims with defendant Talotta**,** leaving First Liberty as the sole defendant.

First Liberty filed a Motion for Summary Judgment as to the remaining breach of contract claim and derivative consortium claim on January 4, 2021, the deadline for such motions under this Court's Scheduling Order.  *See* ECF No. 20.  Twenty-one days later, the Shepherds filed a Cross-Motion for Summary Judgment and a brief in support of that Motion and in opposition to First Liberty's Motion.[1]  First Liberty replied, and the Court held oral argument on March 18, 2021.  The motions are ripe for the Court's decision.

## II.     LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed R. Civ. P. 56(a).  The moving party bears an initial burden of proving a lack of any genuine issues of material fact.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 & n.10 (1986).  After that burden is met, the nonmoving party must "come forward with specific facts showing there is a genuine issue for trial."  *Id.* (internal citations and quotation marks omitted).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

All facts "should be viewed in the light most favorable to the non-moving party, with all reasonable inferences [drawn] in that party's favor."  *Jutrowski v. Township of Riverdale*, 904

---

[1] First Liberty asks the Court to deny the Shepherds' Motion for Summary Judgment and consider First Liberty's Motion for Summary Judgment as uncontested because the Shepherds' Motion and Brief were untimely and out of conformance with the Scheduling Order. Defendant's Reply Br. at 3-4.  To the extent that the Shepherds' brief is in opposition to First Liberty's Motion, that brief was timely and the Court will consider their arguments.  While the Shepherds' cross-motion was indeed untimely, the Court finds there is no prejudice to the Defendants if the Court considers it because Defendants are entitled to summary judgment and the Shepherds' motion fails as a matter of law.

F.3d 280, 2988 (3d Cir. 2018) (quoting *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) (internal quotation marks omitted)). Summary judgment is warranted where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III.   DISCUSSION

To prove a breach of contract claim, a plaintiff must show the existence of a contract, a breach of a duty imposed by the contract, and damages. *See Corestates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1057 (Pa. Super. Ct. 1999). This case turns on whether First Liberty breached a duty under the insurance policy by denying Paul UIM benefits. The Shepherds do not dispute that, if the "regular use exclusion" is valid and enforceable, it applies and precludes UIM coverage in this case. *See, e.g.,* Pl.'s Br. at 29. So the Court turns to the operative question: whether the "regular use exclusion" is unenforceable as contrary to law or public policy.

As a general matter, courts must give plain meaning to unambiguous contract provisions unless doing so is contrary to a clearly expressed public policy. *See Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 758 (Pa. 1994). A "party seeking to void an unambiguous provision in an insurance contract on public policy grounds bears a heavy burden." *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1265 (Pa. 2019). Such "determination of public policy must be based on the law, not simply on general considerations of supposed public interest." *Id.* (citing *Williams v. GEICO*, 32 A.3d 1195, 1206 (Pa. 2011). A provision may be declared contrary to public policy when it violates statutory language. *See Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190-91 (Pa. 2008). In the absence of a "plain indication" of public policy

through "long governmental practice or statutory enactments or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy." *Williams*, 32 A.3d at 1200 (citations omitted). It is "only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it" that a Court may "constitute itself the voice of the community." *Id.* Whether an exclusion complies with public policy also depends on the facts of each case. *See id.* at 1204 (citations omitted).

The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701 *et seq.* (the "MVFRL") provides the statutory backdrop to this case. Under Pennsylvania law, insurance policy provisions that are inconsistent with that statute are rendered void. *See Slupski v. Nationwide Mut. Ins. Co.*, 801 F. App'x 850, 853 n.2 (3d Cir. 2020) (collecting cases). The MVFRL requires that "[n]o motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, . . . unless [UM] and [UIM] coverages are offered therein or supplemental thereto in amounts as provided in section 1734 . . . Purchase of [these] coverages is optional." 75 Pa. C.S.A. § 1731(a). Under this scheme, insurers cannot issue a policy "unless it provides UM/UIM coverage equal to the bodily injury liability coverage," except as provided by statute. *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 231 (3d Cir. 1992). The only permissible way for an insurer to provide UIM coverage that is not coextensive with liability coverage is if the insured signed a statutorily-complaint rejection or reduction of coverage form. *See Slupski*, 801 F. App'x at 853-54. While the parties agree that this is the applicable statutory background, they disagree about the governing caselaw.

First Liberty cites the line of Pennsylvania cases upholding the "regular use exclusion" as unambiguous and not contrary to public policy or the MVFRL. *See, e.g., Williams v. GEICO*, 32

A.3d 1195; *Burstein v. Prudential Prop. & Cas. Inc.*, 809 A.2d 204 (Pa. 2002). According to First Liberty, these cases are still good law and squarely govern the issue at hand.

Most recently, in *Williams v. GEICO*, the Supreme Court considered whether the "regular use exclusion" violated public policy favoring first responders or otherwise violated the MVFRL. *See Williams*, 31 A.3d 1195. The plaintiff in that case – a state trooper – had purchased a personal car insurance policy from GEICO, under which he did not and could not obtain UIM coverage for his patrol car. *See Williams*, 32 A.3d at 1197, 1198 n.5. After GEICO cited the "regular use exclusion" in its denial of UIM coverage for an accident in the trooper's patrol car, the trooper filed suit. *See id.* at 1197. He argued that the exclusion was void as against public policy and that it violated the MVFRL by eliminating UIM coverage without a signed waiver as required under the statute. *Id.* at 1198-99.

The Court first rejected the trooper's first-responder policy arguments. It reasoned that it was not the Court's prerogative to weigh general policies favoring first responders against the cost-containment policy concerns underlying the MVFRL. *Id.* at 1202-04. Such policy judgments, the Court noted, are the province of the legislature. *Id.*

The Court then confronted the trooper's argument that *Burstein*, a previous Pennsylvania Supreme Court case upholding the "regular use exclusion," was factually distinct. The *Burstein* case involved a couple who was injured in a car accident while operating a vehicle owned by the wife's employer and provided to her as a benefit of employment. *See id.* at 1204 (discussing *Burstein*, 809 A.2d 204). After the accident, the couple discovered that the employer had waived UM/UIM coverage on the vehicle, and they sought and were denied UIM benefits from their own insurer based on the "regular use exclusion." The Supreme Court found that voiding the

exclusion on public policy grounds as the couple wished would violate the cost-containment policy underlying the MVFRL. It explained that:

> the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and received gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle.

*Burstein*, 809 A.2d at 208. The Court in *Williams* reaffirmed *Burstein*, found it materially indistinguishable from the case at hand, and held that the "regular use exclusion" is not void as against public policy. Moreover, it found that the trooper's position "conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Williams*, 32 A.3d at 1206 (citation omitted).

Next, the Court addressed the trooper's argument that the "regular use exclusion" violates the express language of the MVFRL by removing UIM coverage without complying with the written waiver requirement. *See Williams*, 32 A.3d at 1207 (discussing 75 Pa. C.S. § 1731). Relying on a plurality opinion of the Pennsylvania Supreme Court discussing a "household use exclusion," the Court held that the "regular-use exclusion as applied here is neither an implicit waiver of coverage nor an improper limitation . . . [but] functions as a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle." *Id.* (citing *Erie Ins. Exch. v. Baker*, 972 A.2d 507, 513-14 (Pa. 2009) (plurality)). Moreover, the Court explained that an alternative reasoning would be "repugnant to the policy underlying the MVFRL" for two distinct reasons. *Id.* First, the cost for UIM coverage would necessarily go up, and second, "employers would have an incentive to underinsure their motor vehicles with the knowledge that injured employees could collect UIM benefits under their personal policies." *Id.*

And finally, the Court noted that stare decisis precluded it from finding that the regular use exclusion violated 75 Pa. C.S. § 1731.

The Shepherds argue that these cases are distinguishable and point instead to *Gallagher v. GEICO*, 201 A.3d 131 (Pa. 2019), a case involving a different exclusion and different provision of the MVFRL. The plaintiff in that case had two separate insurance policies with GEICO: one for his motorcycle, and another for his automobiles. *Id.* at 132-33. He had opted and paid for stacked UM and UIM coverage when purchasing both policies.[2] *Id.* at 132. After he was involved in a motorcycle accident, GEICO denied his claim for stacked UIM benefits under his automobile policy because that policy's "household vehicle exclusion" precluded coverage "while occupying . . . a vehicle owned or leased by you or a relative that is not insured . . . under this policy." *Id.* at 133.

The Court found this outcome untenable under the law. It held that an insurance policy's "household vehicle exclusion," as applied to preclude stacking of UIM benefits, violated the MVFRL. *See Gallagher*, 201 A.3d at 132. Section 1738 of the MVFRL makes stacked coverage the default, and the Court explained that this default can only be waived by a signed rejection of such coverage. *Id.* at 137 (citing 75 Pa. C.S. § 1738(a)). It reasoned that the "household vehicle exclusion" violated Section 1738 of the MVFRL "under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL" without the statutorily required waiver form. *Id.* at 138. Instead, the Court explained, Gallagher had purchased stacked coverage under both of his policies and paid GEICO premiums in line with that decision. *Id.* The Court further explained that GEICO "was aware of this reality, as it

---

[2] "Stacking" refers to the practice of combining coverages of individual vehicles to increase the amount of total coverage available to an insured. *See Gallagher*, 201 A.3d at 132 n.1.

sold both of the policies to Gallagher and collected premiums for stacked coverage from him." *Id.* Accordingly, the Court held that the household vehicle exclusion is unenforceable because it violates the MVFRL. *Id.* at 138 & n.9.

The Shepherds claim that enforcing the regular use exclusion in their case would violate the MVFRL and be contrary to public policy. They argue that the facts of their case are unique because First Liberty insured both UPS and Paul Shepherd, took Paul Shepherd's premium payments directly from his UPS paycheck, and knew its UPS policy did not include UM/UIM insurance for UPS drivers.[3] The Shepherds conclude that First Liberty was aware that Paul Shepherd needed UM/UIM coverage for his work-related driving and therefore assumed the risk of that coverage. It would thus, in their view, be contrary to public policy to allow First Liberty to hide behind the "regular use exclusion" to deny coverage. They also argue that the "regular use exclusion" in their policy violates the MVFRL.

---

[3] At oral argument, the Shepherds also argued that First Liberty concocted a scheme by coming to the UPS hub and convincing the Shepherds to bundle their insurance. These purported facts do not have record support, so the Court disregards them. The Shepherds also argue that First Liberty knew UPS's delivery trucks did not have UM/UIM coverage. There is no factual support for this proposition in the record. The record only demonstrates that Liberty Mutual/First Liberty covered UPS for workers' compensation. *See* ECF No. 38-3. Nothing demonstrates whether Liberty Mutual or another company provided car insurance to UPS, whether that car insurance policy included or waived UM/UIM benefits for its delivery trucks, or whether, if UPS had a different car insurance provider, First Liberty knew of the status of coverage on UPS's trucks. However, whether First Liberty knew that the UPS trucks did not have UM/UIM coverage is immaterial to the Court's decision. Finally, First Liberty disputes the proposition that the same company insured UPS as the Shepherds. It explains that Liberty Mutual provided workers' compensation insurance to UPS while First Liberty – a different insurer – insured Paul Shepherd. At oral argument, the Shepherds argued that the two are one and the same. The Court notes the factual dispute, but finds it is not a genuine dispute of material fact. If they are different insurers, *Williams* would be on point and render the "regular use exclusion" enforceable in line with that precedent. But even if the same company carried UPS's workers' compensation and provided individual car insurance to the Shepherds, that would not change the applicability of the *Williams* line of cases or lead the Court to conclude that the exclusion is against public policy for the reasons described herein.

The Court will first consider the Shepherds' argument that the exclusion violates Section 1731 of the MVFRL and will then turn to their argument that enforcing the exclusion under the facts of this case violates public policy.

### A. The "regular use exclusion" does not violate the MVFRL.

The Shepherds ask the Court to extend the reasoning of *Gallagher* to find that the "regular use exclusion" violates the MVFRL by acting as a waiver of UIM coverage without a signed form. But doing so would violate Pennsylvania's Statutory Construction Act. Pursuant to that Act, *stare decisis* requires courts to adhere to prior decisions that interpret specific statutory language. *See Williams*, 32 A.3d at 1208. In *Williams*, the Court declined to hold that the "regular use exclusion" violates the MVFRL because reinterpreting § 1731 to "preclude long-standing exclusions to UIM coverage on public policy grounds would violate the canons of statutory construction." *Id*. Because *Burstein* held that the "regular use exclusion" did not violate public policy by conflicting with the MVFRL in 2002, and the legislature has not since amended § 1731, *stare decisis* required the Court to adhere to its prior decision. *Id.* at 1208-09.

Just as the Pennsylvania Supreme Court in *Williams* concluded that it was required to follow *Burstein*'s holding that the "regular use exclusion" does not violate the MVFRL, so will this Court follow *Williams* and *Burstein*. The Pennsylvania Supreme Court did not overrule or abrogate these cases in *Gallagher*; the Court was instead careful to limit its holding. *See Gallagher*, 201 A.3d at 138 n.8 ("[W]e offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general . . . Our focus here is narrow."). The Third Circuit has also noted the narrowness of the Court's holding. *See, e.g., Dunleavy v. Mid-Century Ins. Co.*, No. 20-2100, 2021 WL 1042981, at *3 n.3, *2 n.2 (3d Cir. 2021) (noting that "*Gallagher* only implicates stacking" and finding that reliance on *Gallagher*

was misplaced in a case that did not involve stacking).  *Gallagher* discusses a different exclusion and a different provision of the MVFRL, and thus provides no ground for finding that the Courts' holdings in *Burstein* and *Williams* that the "regular use exclusion" does not violate the MVFRL are no longer good law.

The Shepherds attempt to differentiate *Williams* and *Burstein* because of the purported fact that First Liberty was aware that Paul Shepherd drove a UPS truck that did not have UM/UIM coverage.  But that distinction has no bearing on whether the "regular use exclusion" acted as a waiver of coverage in contravention of the statute.  The MVFRL requires insurers to "provide coextensive liability and UIM coverage, unless either the rejection requirements of § 1731 or the reduction requirements of § 1734 are met."  *Slupski*, 801 F. App'x at 851.  There is no support for the proposition that an insurance company's awareness that an insured may at some point drive a regularly used, non-covered car that is not otherwise insured for UIM coverage means that the coextensive coverage requirements of the MVFRL have been violated.

Even if the Court could ignore *Williams* and *Burstein*, *Gallagher*'s waiver reasoning does not apply here.  The issue in *Gallagher* was that the household vehicle exclusion acted as a waiver of stacked coverage, meaning that the plaintiff could not receive the coverage he had purchased.  *See Gallagher*, 201 A.3d at 138.  Here, however, the Shepherds *do* have UM/UIM coverage on their own cars and on any cars they drive that do not fit within any of the applicable exclusions to such coverage.  The "regular use exclusion" is therefore not a de facto waiver of UM/UIM coverage that the Shepherds had paid for, but a limitation on coverage factored into the price they paid for UM/UIM coverage.

The Pennsylvania Supreme Court has regularly held that the express language of the MVFRL does not preclude the regular use exclusion.  *See Williams*, 32 A.3d at 1209 (discussing

*Burstein*). Because those cases govern and the Shepherds' attempt to distinguish them fail, the "regular use exclusion" here does not violate the MVFRL, either.

**B. Enforcing the "regular use exclusion" does not violate public policy under these facts.**

The Shepherds also raise general public policy arguments, claiming that enforcing the "regular use exclusion" in this case would be contrary to public policy. As a general matter, the Pennsylvania Supreme Court has found that the "regular use exclusion" is not contrary to public policy. *See Burstein*, *Williams*. But the Court's "final determination of whether the ["regular use] exclusion["] complies with public policy is dependent on the factual circumstances of each case." *See Williams*, 32 A.3d at 1204. So the Court considers the Shepherds' argument that enforcing the exclusion would be contrary to public policy because First Liberty insured both UPS and Paul Shepherd, took Paul Shepherd's premium payments directly from his UPS paycheck, and knew its UPS policy did not include UM/UIM insurance for UPS drivers.

Taken to its logical conclusion, the Shepherds' argument would require the Court to find that, as long as an individual purchases UM/UIM coverage for one car, their insurer has a duty to provide UM/UIM coverage to any and all vehicles that the insurer is aware a person may ever drive and that the insurer is aware does not already have UM/UIM coverage. The Court finds that this proposition is unsupported by the caselaw and is itself contrary to the public policy underlying the MVFRL.

The Shepherds attempt to find support for their public policy argument by claiming that a key distinguishing feature in the caselaw is whether the same company insured the covered vehicles and the non-covered vehicle that was the subject of the lawsuit. In *Gallagher*, GEICO insured both the plaintiff's motorcycle and his cars, so GEICO was aware of the risk of stacking. *See Gallagher*, 201 A.3d at 604, 613. In *Burstein*, in contrast, the couple's personal insurer was

unaware of the employer's car, and the Court was concerned with requiring the couple's insurer to underwrite unknown risks for which it had not been compensated to insure. *See Burstein*, 809 A.2d at 208. *Williams* also involved two insurance companies, so holding for the trooper in that case would have required the trooper's personal insurer to compensate for risks it had not agreed to insure and for which premiums had not been collected. *See Williams*, 32 A.3d at 1206. Based on this distinction, the Shepherds ask this Court to find that the reasoning in *Williams* and *Burstein* does not apply.

Once again, *Gallagher* does not apply to the situation at hand. That case was about stacking between policies, which the plaintiff had paid for and which the household vehicle exclusion precluded him from receiving. *See Gallagher*, 201 A.3d at 138.

To be sure, *Williams* and *Burstein* discussed how voiding the "regular use exclusion" would frustrate the public policy of cost containment in the MVFRL because "the insurer would be forced to underwrite unknown risks that it has not been compensated to insure." *Burstein*, 809 A.2d at 208; *see also Williams*, 32 A.3d at 1206. Based on those facts, the *Williams* Court found that the trooper's position "conflict[ed] with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Id.* The Shepherds essentially argue that, because those specific facts do not exist here, enforcing the "regular use exclusion" would be contrary to public policy.

While *Williams* and *Burstein* involved unknown risks, it does not necessarily follow that applying the "regular use exclusion" to a known risk is contrary to clearly established public policy. Indeed, the principles of cost containment and correlations between the scope of coverage and premiums collected underlying the MVFRL discussed in those cases still apply even if an insurer is aware of potential risks and chooses to exclude those risks from the

coverage provided and premiums charged. If an insurer were forced to provide UIM coverage for every otherwise-uninsured vehicle for which it could be charged with purported knowledge, insurance prices would inevitably rise.

A plaintiff "seeking to void an unambiguous provision in an insurance contract on public policy grounds bears a heavy burden." *Williams*, 32 A.3d at 1206 (citation omitted). While they raise creative arguments, the Shepherds have not met their burden here. As in *Williams*, the Shepherds have not demonstrated by record evidence that they could not have purchased a supplemental rider from First Liberty that would waive the regular-use exclusion. *Williams*, 32 A.3d at 1206. And the Shepherds have not shown that there is a virtual unanimity of opinion that the exclusion in this context violates public policy. The legislature has not required employers to purchase UM/UIM coverage for the cars its employees may drive. *See Burstein*, 32 A.3d at 209-210 (finding no violation of public policy where an insured could have accepted the vulnerability of driving a work vehicle without UIM coverage). The Shepherds' argument does not ask the Court to require UPS to purchase UM/UIM coverage, but actually goes one step further by asking the Court to require individuals' insurance companies that know employer vehicles are not covered to pick up the slack for those employers. But it is not this Court's role to impose a duty where the legislature has not, particularly when there is a separate statutory scheme governing workers' compensation for employment-related injuries.

Nor have the Shepherds provided any support for the proposition that *knowing* about a risk is the same as *assuming* a risk, or that the former creates a duty to do the latter. There is no unanimity of opinion that private insurers must provide UM/UIM coverage to employees driving work cars when their employers do not. In fact, the Pennsylvania Supreme Court has determined that requiring private insurers to do so would itself be repugnant to the MVFRL. *See Williams*,

32 A.3d at 1208 (declining to find that the "regular use exclusion" violates public policy in part because employers would be incentivized to underinsure their motor vehicles, which contradicts the policy underlying the MVFRL).

In sum, while the Shepherds' arguments are creative, they do not carry the heavy burden to void an unambiguous exclusion on public policy grounds, particularly when that exclusion has previously been upheld in the employment context.

## IV.    CONCLUSION

Because the Shepherds have failed to show a genuine dispute of material fact and First Liberty is entitled to judgment as a matter of law, summary judgment will be granted to First Liberty. And because the Shepherds' untimely cross-motion for summary judgment fails for the same reasons, the Court will deny summary judgment to Plaintiffs.

An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**